```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
PAUL DEXTER,                                                :
                                                            :
                              Plaintiff,                    :
                                                            :      04 Civ. 7510 (GEL)
                                                            :
              -v-                                           :      **OPINION AND ORDER**
                                                            :
DEPOSITORY TRUST AND CLEARING                               :
CORP., et al.,                                              :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------x
```

Lee Squitieri, Squitieri & Fearon, LLP, New York, NY, for Plaintiff.

Sharon C. Brooks, Alison C. Gooding, F. Joseph Warin, Melanie L. Katsur (Terri L. Reicher, of counsel), Gibson, Dunn & Crutcher LLP, New York, NY, for Defendant National Association of Securities Dealers, Inc.

Gregg M. Mashberg, James K. Landau, Peter S. Casalino, Proskauer Rose LLP, New York, NY for Defendants Depository Trust and Clearing Corporation and Cede & Company.

GERARD E. LYNCH, District Judge:

      In this action, plaintiff Paul Dexter charges the National Association of Securities Dealers ("NASD") with negligence and violations of section 6(b) of the Securities Exchange Act of 1934, and Depository Trust and Clearing Corporation ("DTC") and Cede & Company ("Cede") with negligence and conversion, in connection with a distribution of proceeds from a Litigation Trust. Defendants have moved to dismiss, principally on the ground that they are immune from suit. The motions will be granted.

**BACKGROUND**

The following facts are taken from the complaint, and must be taken as true for purposes of this motion to dismiss.

Plaintiff Paul Dexter is a former shareholder of United Companies Financial Corporation ("UCFC"), a bankrupt, formerly publicly-traded entity. Pursuant to a reorganization plan ("Plan") ordered by a United States Bankruptcy Court, all equity interests in the company were extinguished. However, the Court created a Litigation Trust to pursue claims of the former shareholders, and the former shareholders became beneficiaries of the Trust. As a result, Dexter owns Trust Certificates that represent his beneficial interest in the Litigation Trust. Such Certificates, by express provision of the Bankruptcy Court's Order, are not tradable. Accordingly, any shares of stock that were traded subsequent to the reorganization did not carry with them Litigation Trust interests under the Plan.

Normally, when a public company is reorganized in this way, the defendant NASD promptly issues a Uniform Practice Advisory ("UPA") that describes the terms and conditions set by the approved reorganization plan for trading in the company's equity shares. In the case of UCFC, however, the NASD failed to issue a UPA. Instead, the NASD took no action for two years, and even then did not issue a UPA. Instead, it apparently announced on its website in November 2002 that shares traded after October 31, 2000, included beneficial interests in the Litigation Trust, directly contradicting the Plan embodied in the Bankruptcy Court's order. According to the complaint, even this announcement may not have been available to the general public, having appeared on a confidential or secure website not generally available. The NASD's instructions, when coupled with provisions of its Uniform Practices Code governing the "ex-

dividend dates" of traded securities, ensured that the eventual distribution of proceeds from the Litigation Trust would go to those who owned UCFC shares as of the date of the distribution, rather than, as provided in the Plan, to shareholders as of the Plan's effective date.

In December 2003, a lawsuit presenting claims on behalf of UCFC was settled, and the Litigation Trust received a substantial cash payment. Some months later, in June 2004, the Trustee of the Litigation Trust authorized a distribution to the beneficiaries. The court-designated distribution agent duly forwarded a large portion of the proceeds to defendant Cede, a subsidiary of defendant DTC, which was the registered nominee owner of 81% of the outstanding UFTC shares. In accordance with the Plan, these funds should have been distributed to holders of Trust Certificates – in effect, the beneficial owners of UCFC shares as of the Plan's effective date, October 30, 2000. In fact, however, in violation of the Bankruptcy Court's order, but in accordance with the directives issued by the NASD, Cede distributed the proceeds to UFTC shareholders as of June 25, 2004, in effect benefitting those who had purchased cancelled shares of UFTC after the effective date of the Plan at the expense of the proper owners of Trust Certificates as of that date (such as Dexter), who were entitled to the proceeds under the terms of the court-ordered Plan.

Dexter brought this action, on behalf of himself and others similarly situated, charging that the NASD's actions were taken in bad faith to protect the interests of its members who had profited by trading in cancelled shares of UCFC, and that Cede and DTC acted negligently in distributing the proceeds of the Litigation Trust to the wrong parties in violation of the Plan.

3

## DISCUSSION

I. <u>NASD</u>

Defendant NASD correctly argues that it is absolutely immune from suit for the actions challenged by Dexter.

The NASD is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") under the Securities Exchange Act of 1934 ("Exchange Act"). <u>See</u> 15 U.S.C. §§ 78o-3 <u>et</u> <u>seq</u>. Under the Act, the NASD operates under the supervision of the SEC which must approve and may overturn NASD rules, policies, practices, and interpretations. 15 U.S.C. § 78s(b), (c).

With SEC approval, <u>see</u>, <u>e.g.</u>, SEC Release 34-29687, 56 Fed. Reg. 47819 (Sept. 20, 1991), the NASD has adopted the provisions of the Uniform Practice Code, which prescribes the rules and procedures for handling over-the-counter securities transactions, including the delivery, settlement date, and ex-dividend dates for securities so traded. NASD Manual (2004). UPC Rule 11140 authorizes the NASD to set the ex-dividend date, which controls the effective ownership date for dividends and distributions for securities, like those of UCFC, listed on markets under its control. In essence, Dexter's lawsuit challenges the NASD's decision setting the ex-dividend date for the distribution in question, along with certain related directives.

SROs are absolutely immune "from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions." <u>D'Alessio v. NYSE</u>, 258 F.3d 93, 105 (2d Cir. 2001). <u>See also</u> <u>Barbara v. NYSE</u>, 99 F.3d 49 (2d Cir. 1996). This immunity extends to the NYSD. <u>DL Capital Group, LLC v. Nasdaq Stock Market, Inc.</u>, 409 F.3d 93 (2d Cir. 2005). Moreover, the Second Circuit has recently rejected efforts to limit the scope of that immunity,

4

holding that the immunity extends to actions alleging fraud (and thus, a fortiori, actions like this one alleging "bad faith"), and to suits by individual investors as well as suits by members of the SRO. Id. at 98-100.

This immunity is an integral part of the American system of securities regulation. Congress and the SEC have delegated significant responsibility for regulation of the securities markets to SROs, operating under the supervision of the SEC. Accordingly, SROs such as the NASD "preform[] a variety of regulatory functions that would, in other circumstances, be performed by [the SEC]." Barbara, 99 F.3d at 59. The NASD thus "stands in the shoes of the SEC" in carrying out these functions. D'Alessio, 258 F.3d at 105. Because the SEC would enjoy absolute immunity from suit if it carried out these responsibilities itself, SROs have similar immunity when exercising functions delegated to them by the SEC. Moreover, "absolute immunity must be absolute," DL Capital, 409 F.3d at 95, because only such immunity can protect regulatory agencies from the fear of burdensome damage suits that would inhibit the exercise of their independent judgment.

The complaint in this case challenges actions taken by the NASD in the core exercise of its regulatory functions. Dexter attacks the NASD's regulatory decision to set an ex-dividend date for UCFC securities; its instructions requiring UCFC shares traded after October 31, 2000, to be accompanied by "due bills"; and its decision to authorize trades for rights to distributions from the Litigation Trust. Regardless of the merits of Dexter's claims with respect to the propriety of these decisions, all were clearly regulatory decisions squarely covered by the NASD's immunity as an SRO.

Under the Uniform Practice Code, which has been approved by the SEC, the NASD was specifically authorized to set an ex-dividend date for UCFC securities traded on markets it controlled. UPC Rule 11140. Similarly, its decision to require due bills in connection with certain trades is specifically authorized by rule. UPC Rule 11630(d). Finally, the NASD's decision to authorize (or not to authorize) trading in certain securities is a core regulatory function that is covered by absolute immunity. Sparta Surgical Corp. v. NASD, 159 F.3d 1209, 1215 (9th Cir. 1998).

Dexter's argument that immunity does not apply because the NASD's actions violated a bankruptcy court order and § 12(a) of the Exchange Act, in the furtherance of "unprotected illegal, proprietary profit-making activities" (P. Mem. 2), miss the point of absolute immunity. The purpose of absolute immunity is to protect all conduct of an SRO from liability, so long as the conduct "aris[es] out of the discharge of its duties under the Exchange Act." D'Alessio, 258 F.3d at 104. Thus, assuming arguendo that the NASD's conduct was incorrect and unlawful, it is nevertheless protected. There would be no point to an immunity that only protected actions that were in any event correct. Since "absolute immunity must be absolute," DL Capital, 409 F.3d at 95, it must protect even actions that a plaintiff could ultimately establish were in violation of law. Nor do SROs lose their immunity because, in addition to their regulatory functions, they also are profit-making and profit-seeking enterprises. The immunity is driven by "the SRO's *function* as a quasi-governmental authority." Id. at 99 (emphasis in original). In D'Alessio, the Second Circuit rejected the argument that the NYSE should not be given immunity because plaintiff had alleged that the challenged NYSE decisions were made to increase its profits. 258 F.3d at 98. When a governmental agent has absolute immunity, its "motivation in performing [its

6

governmental] functions is irrelevant to the applicability of absolute immunity." Bernard v. County of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004).

Accordingly, however badly motivated, inept, or even unlawful the NASD's actions may have been, it is absolutely immune from suit on both federal and state claims brought by Dexter. Because the NASD is immune from any suit based on its exercise of its regulatory functions, all of plaintiff's claims against the NASD must be dismissed, and the Court need not reach the NASD's other arguments for dismissal.

II.  DTC and Cede

DTC and Cede (collectively, the "DTC defendants") argue that they too are effectively immune from plaintiff's suit. Their argument is slightly more complex, but ultimately is equally meritorious. Accordingly, the complaint will also be dismissed as to them.

Section 17A of the Exchange Act, added in 1975, gave the SEC authority to regulate all persons involved in processing securities transactions, in an effort to create a uniform national system for the prompt and accurate clearance and settlement of securities transactions. 15 U.S.C. §78q-1(a)(1)(A), (a)(2)(A)(I). Under this statute, clearing agencies are required to adopt rules, subject to SEC approval, to further these goals. 15 U.S.C. § 78q-1(b)(3)(F). As a registered clearing agency that has adopted such regulations, DTC is also an SRO. In re Depository Trust Co., SEC Release No. 34-47978, 2003 WL 21288541, at *6 & n. 50 (June 3, 2003).

The complaint asserts state law causes of action against the DTC defendants for both negligence and conversion. In essence, however, both of these claims rest on the claim that DTC and Cede violated plaintiff's rights by distributing funds to the beneficial owners of securities held by Cede as nominee in accordance with the ex-dividend date set by the NASD. The

NASD's regulatory decisions would be meaningless unless a clearing agency such as DTC carried out its directives. DTC's actions here were ministerial in nature. It would be illogical to clothe the NASD with absolute immunity for its regulatory decisions, and then to impose liability on a clearing agent that simply carried out its functions in obedience to, and in express reliance on, those decisions.

Dexter attempts to defeat the logic of this argument by citing In re Blech Sec. Litig., 94 Civ. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003). At issue there was whether the defendant Bear Stearns, which acted as a clearing broker, was a knowing participant in a securities fraud perpetrated by Blech. In ruling on a motion in limine by plaintiffs seeking to exclude evidence of Bear Stearns's purported compliance with NYSE regulations, the court ruled that compliance with SRO regulations was relevant to the defense as "evidence of industry practice," but did "not constitute an exemption from liability." Id. at *4. In Blech, however, defendants were charged with fraud, and the factual issue at trial was to be "whether Bear Stearns performed its functions pursuant to the SRO Rules and the Clearing Agreement 'knowingly in such a manner as to enhance the Blech market manipulation scheme.'" Id., quoting In re Blech Sec. Litig., 94 Civ. 7696 (RWS), 2002 WL 31356498, at *6 (S.D.N.Y. Oct. 17, 2002). This case is entirely different. Plaintiff does not allege any cause of action based on fraud, and there is no allegation that the DTC defendants did anything other than ministerially execute a distribution in accordance with the directives of the NASD.

Under these circumstances, the DTC defendants cannot be liable for negligence or conversion. As a matter of law, the DTC defendants cannot have breached any duty of due care by executing a distribution in accordance with governing directives of the regulatory agency

8

responsible for directing its activities. Nor can the DTC defendants be found to have converted plaintiff's property, since their actions, taken in reliance on the authority of such an agency, are privileged. An act which would otherwise constitute conversion is privileged when it is committed pursuant to a court order valid on its face. Calamia v. City of New York, 879 F.2d 1025, 1031 (1989); American Law Institute, Restatement (Second) of Torts, § 266 (1965). Similar protection should be extended to a clearing agency that carries out its normal ministerial function in accordance with the directives of governing regulatory authority. Accordingly, plaintiff's claims against the DTC defendants must be dismissed.

## CONCLUSION

For the reasons stated above, plaintiff's complaint is dismissed in its entirety.

SO ORDERED.

Dated: New York, New York
September 21, 2005

_____
GERARD E. LYNCH
United States District Judge